No. 30,828.

THE PHŒNIX MUTUAL LIFE INSURANCE COMPANY, *Appellee*, v. THE CENTRAL STATES FIRE INSURANCE COMPANY, *Appellant*, J. G. DURHAM, *Appellee*.

(19 P. 2d 696.)

Opinion filed March 11, 1933.

*Arnold C. Todd, James G. Norton, Carl O. Bauman* and *Julian E. Ralston*, all of Wichita, for the appellant.

*C. H. Pugh, Lloyd F. Cooper, A. M. Ebright, P. K. Smith* and *Paul H. White*, all of Wichita, for the appellee.

The opinion of the court was delivered by

HUTCHISON, J.: This is an action to recover upon a fire insurance policy where the defense is that it is void because of procuring additional insurance without the consent of the insurance company.

The trial court made findings of fact and conclusions of law. The decision was against the insurance company, and it appeals.

The plaintiff is a life insurance company and, as holder of the mortgage on the property insured, brings the action, after the complete destruction of the property by fire, under the usual form of mortgage-clause assignment of the policy. The property owner was impleaded by the defendant company, and he repleaded the allegations of the petition, and, further, that the fire insurance company had waived the provision of the policy as to additional insurance, consenting thereto, and was estopped from asserting it. The fire insurance company then tendered the plaintiff the full amount of the policy with interest and asked to be subrogated to the rights of the mortgagee against the insured.

The trial court held the issues to be between the fire insurance company and the insured with the burden of proof on the latter.

Appellant assigns as errors many adverse rulings of the trial court made in preliminary matters and during the progress of the trial and forcibly argues and presents them in its brief, but because the motion for new trial was filed within three days after the ruling upon the motion to modify the findings of fact and more than three days after the filing of the findings, these questions are not properly here for review. In the case of *Brubaker v. Brubaker*, 74 Kan. 220, 86 Pac. 455, the following construction was placed upon the statute, R. S. 60-3003, with reference to the time of filing such motion in cases where findings of facts and conclusions of law were made:

"Where a case is tried without the intervention of a jury, and the court files findings of fact and conclusions of law which include a determination of the general issue, either party aggrieved by rulings made during the trial, in order to procure their reviews here, must file a motion for a new trial within three days from the time such findings and conclusions are made, irrespective of the time judgment is rendered." (Syl.)

And in a recent case the matters and things eliminated under such circumstances are enumerated as follows:

". . . the findings of fact are not assailable on any ground on which a timely motion for new trial might have been based. The court may not consider whether the trial was fairly conducted, whether evidence was erroneously admitted or rejected, or whether the findings were sustained by evidence. . . . Therefore, the findings of fact stand as the unquestioned facts of the case." (*Dolan Mercantile Co. v. Wholesale Grocery Subscribers*, 131 Kan. 374, 381, 291 Pac. 935. See, also, *Oliver Farm Equipment Co. v. Foster*, 134 Kan. 654, 8 P. 2d 364.)

The findings of fact show that Durham, the owner of a tract of land in Butler county, insured the two-story brick building thereon for $2,000 with the defendant company through its agent, C. D. Knote, with office or place of business at Douglass, Kan. This is the policy on which this action has been brought. Thereafter the owner made extensive improvements on the dwelling and a few months later applied to the same agent for an additional policy because of the improved condition of the property. The application for $1,500 additional insurance on the house was taken by the agent, Knote, and sent in to the defendant company. The application was approved by the company, the policy was issued and forwarded to the agent Knote for delivery, but it carried a higher rate of premium than the first, being written at the tenant rate instead of the owner rate, and to this the owner objected. Findings 6, 7, 8, 9 and 10 are as follows:

"6. Durham then called at the central offices at Wichita and was referred to Ed Y. Dukes, superintendent of agencies and who also had charge of the underwriting work of the company. They discussed the matter of premium and Durham advised Dukes that he would cancel the policy, as he could secure a policy under the old rates from another company and that he would do so. Dukes told him that if he could do this, to go ahead and get the other policy.

"7. Thereafter, in August, 1930, Durham took out an additional fire insurance policy in the amount of $1,000 on the house involved, with the Preferred Risk Fire Insurance Company.

"8. In November, 1930, the house was totally destroyed by fire. Its value exceeded the total of both the fire insurance policies carried upon it.

"9. The Central States Fire Insurance Company consented to Durham's taking out additional insurance in another company. Also at the time of the issuance of the second policy the agent in Douglass, of the Preferred Risk Company, went to Knote, agent of the Central States Fire Insurance Company, and informed him that he was writing the new policy, and secured information from him for the application.

"10. After the fire one Larkin, an insurance adjuster representing both the Central States and the Preferred Risk Companies, visited the scene of the fire with Durham and made a report for both companies. Somewhere between 30 and 60 days after the fire Durham took the matter of payment of the policy up with an agent of the Central States Company, was informed by the agent that he did not think the company was liable for the full amount, and the agent then told Durham that he would pay the premium back to him. The same has not been paid. The Central States Company tendered into court the face of the policy and asked to be subrogated. That Durham would have refused to accept the return of the premium if the agent had at that time actually tendered him the money."

The policy enumerated a number of grounds which would render it "null and void, unless otherwise provided by agreement indorsed hereon," among which was the following: "or if the assured shall now have or hereafter make or procure any other contract of insurance whether valid or not."

No consent to procure additional insurance was indorsed on the policy. The court, in finding No. 9, found that consent was given, presumably by Dukes, the superintendent of agencies, as mentioned in finding No. 7. In addition to this, finding No. 9 shows that knowledge was brought home to Knote, the soliciting agent, at the time the second policy was being prepared by the agent of the other company.

Many authorities are cited by the appellant upholding the provision in the policy rendering it null and void in case of additional insurance being taken without being authorized. There is no contention as to the general rule, but the finding here of consent given was necessarily a verbal consent instead of one indorsed on the policy.

The case of *Metropolitan Life Ins. Co. v. Mennonite Mutual Fire Ins. Co.*, 131 Kan. 628, 293 Pac. 402, cited by appellant, upholding this rule, does not assist us much in the case at bar, for there the additional policies were taken without any knowledge or notice of the original insurance company and with the deliberate intention to discontinue the original by not paying the new and necessary premium demanded thereon.

The case of *Pettijohn v. Insurance Co.*, 100 Kan. 482, 164 Pac. 1096, cited by appellant, is quite similar in several respects to the case at bar. There the owner, after taking out the original insurance, was solicited to take out more on the property, as it would stand more. To this the owner replied he was intending to take more insurance but wanted it to be in different companies. After taking out two additional policies he told the soliciting agent he had done so, and the agent said he was sorry to lose the business. The judgment rendered for plaintiff was reversed, because the agent was not a general agent and the abrogation of the rule was only evident by the expressed willingness on the part of the soliciting agent to endeavor to get another risk for his company. Very different in the instant case, where the soliciting agent not only sent in the application, but the policy was written up by the company in an amount $500 in excess of the one later written by another company.

It was not a case of overinsurance, as the court found the value of the property exceeded the total of both policies.

In the case of *Palin v. Insurance Co.*, 92 Kan. 401, 140 Pac. 886, the taking out of additional insurance in line with a distinct arrangement with the soliciting agent at the time the application for the original policy was signed, was held not to invalidate the original, based upon the rule announced in the case of *Pfiester v. Insurance Co.*, 85 Kan. 97, 116 Pac. 245, as to the agent in such matters being the agent of the company and not the agent of the owner.

"Where a fire insurance soliciting agent makes a temporary concession waiving the keeping of the inventory and books in an iron safe for a week, and writes answers to other questions in the application different from the facts and answers given him by the applicant, and he fully informs the general agent of such matters, and the general agent, with such information and knowledge, writes the policy and sends it to the applicant through the soliciting agent, such information becomes the knowledge of the company and it will be bound thereby." (*Boberg v. Fitchburg Mutual Fire Ins. Co.*, 127 Kan. 787, syl. ¶ 1, 275 Pac. 211.)

Not only did the defendant company in this case show its willingness to waive this restriction by writing an additional policy itself, but its superintendent of agencies told the insured, when he spoke of getting it from another company at the old rate, to go ahead and get it. The purpose of the provision prohibiting additional insurance is mainly to avoid the risk of overinsurance, which in this case is entirely eliminated as the company was ready and willing to carry $1,500 additional on the property, whereas the additional policy written by another company is only for $1,000.

Appellee points out and urges that the policy itself by its printed terms permitted additional insurance by reason of two other provisions in the policy which amount to a distinct waiver of the provisions heretofore cited. They are as follows:

"In case of any other insurance upon the within described property, this company shall not be liable to said mortgagee for a greater proportion of any loss or damage to the within described property than the sum hereby insured bears to the whole amount of insurance on said property.

"In case of loss, this company shall be entitled to the *pro rata* contribution of any other insurance, whether valid or invalid, upon the property hereby insured, which contribution shall apply to any articles hereby insured which may be specifically excluded by the terms of such insurance."

The liability of the defendant company is at least limited by these provisions in case the property is overinsured.

The findings of the court show a distinct and sufficient waiver of

the restriction and a consent to the additional insurance by the superintendent of agencies, an officer of the company, and by reason of such waiver the defendant company is estopped to claim the policy was rendered null and void by the taking out of the additional insurance. On these findings the conclusion of the trial court against the defendant company was based, and in this we concur. This being the conclusion as to the issues between the fire insurance company and the insured, the appellant is not entitled to the subrogation asked in its answer.

Appellant insists that the taxing of costs to it and including in the costs an attorney fee of $500 was improper under the pleadings and facts in this case, especially because it had made a tender to the plaintiff mortgagee in its answer and in open court before the taking of any testimony. The attorney for plaintiff declined to accept the tender as such without the rendition of a judgment therefor, not wishing to waive any right to the allowance of attorney fee and costs of the action. The statute providing for attorney fee and costs, R. S. 1931 Supp. 40-908, is as follows:

"That in all actions now pending, or hereafter commenced, in which judgment is rendered against any insurance company on any policy given to insure any property in this state against loss by fire, tornado, lightning or hail, the court in rendering such judgment shall allow the plaintiff a reasonable sum as an attorney's fee to be recovered and collected as a part of the costs: *Provided, however,* That when a tender is made by such insurance company before the commencement of the action in which judgment is rendered and the amount recovered is not in excess of such tender no such costs shall be allowed."

It would seem that where no judgment was rendered a fee for attorney might not be allowable. At any rate a judgment was rendered in this case at the conclusion of the trial and a fee of $500 was by the court allowed, of which $200 was for the attorneys for plaintiff and $300 for the attorney for Durham, the insured. We find no error in this part of the judgment. (See *Light v. St. Paul Fire & Marine Ins. Co.*, 132 Kan. 486, 296 Pac. 701; and *Holyfield v. Farmers Alliance Ins. Co.*, 132 Kan. 539, 296 Pac. 710.)

The judgment is affirmed.

THIELE, J., not participating.